IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA ANN DARDEN, | ) | Case No. |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | 3:14-CV-88-WHA-TFM |
| v. | ) | |
| | ) | |
| HALLA VISTEON CLIMATE | ) | |
| CONTROL ALABAMA CORP., | ) | |
| | ) | |
| DEFENDANT. | ) | JURY DEMAND |
| | ) | ENDORSED HEREON |

## COMPLAINT

Now comes Plaintiff, Debra Ann Darden, by and through her attorney, and makes the following allegations against Defendant, Halla Visteon Climate Control Alabama Corp.:

I. JURISDICTION AND VENUE

1. This suit is authorized and instituted pursuant to the Fair Labor Standards Act, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; as well as other rights identified under the laws of Alabama, over which the Court has jurisdiction pursuant to 28 U.S.C. § 1367. Jurisdiction of this Court is established under 28 U.S.C. § 1331.

1

2. Venue lies with this Court pursuant to 28 U.S.C. §1391(b) as the acts giving rise to the claims alleged herein occurred within this district.

3. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on or about July 26, 2013 (attached as Exhibit A). On or about December 19, 2013, the EEOC issued a Notice of Suit Rights (attached as Exhibit B).

## II. PARTIES

4. Plaintiff Debra Ann Darden (hereinafter "Plaintiff") was an employee of Halla Visteon Climate Control Alabama Corp. in Shorter, Alabama.

5. Plaintiff was at all times relevant hereto an "employee" residing in Alabama.

6. Defendant is a corporation that has gross annual sales of at least $500,000 and is engaged in interstate commerce.

7. Defendant is Halla Visteon Climate Control Alabama Corp. (hereinafter "Defendant").

## III. FACTS

8. Plaintiff was employed as an Assistant Team Leader by Defendant.

9. Plaintiff is African American, Baptist, and 54 years of age.

10. Plaintiff was hired in February 2008 and received no discipline prior to the events surrounding her termination.

2

11. On June 22, 2013, Plaintiff's supervisor, Cynthia Lewis, informed her that once her shift had finished a set number of parts, Plaintiff and her shift could leave early.

12. Plaintiff's shift finished the required number of parts around 1 a.m. the following morning.

13. Production Team Member Michael Ingram then asked Plaintiff if he could leave.

14. Plaintiff instructed Ingram that the shift should confirm with Lewis that it was acceptable for them to leave.

15. Plaintiff went and found Lewis and asked if she and her shift could leave.

16. Lewis said that she did not know and told Plaintiff that she would ask another member of management, Marvin (Last Name Unknown).

17. Marvin LNU informed Plaintiff he would ask Superintendent Tom Himes (Caucasian) if the shift could leave.

18. Marvin LNU then left to go find Himes.

19. When Marvin LNU did not return, Plaintiff found Himes herself and asked if she and her shift had permission to leave.

20. Himes replied, "No, you can't leave. You make me so sick. You think you run everything."

21. As he spoke, Himes waved his cellular phone in Plaintiff's face.

22. Plaintiff then instructed her team members that they did not have permission to leave.

23. As Plaintiff was instructing the team member that they should not leave, Himes approached and showed Plaintiff a paper he had printed out and said, "I can't understand why you people wanna break the rules."

24. Showing Plaintiff the sheet, Himes asked Plaintiff if she knew how to read, even though Plaintiff has a college education.

25. Plaintiff responded, "You don't ever have any trouble out of my team. We always meet our numbers."

26. Plaintiff then informed Himes that her shift did not have any work to do, as they had completed it all.

27. Himes then put his hand on or near Plaintiff's nose.

28. Plaintiff turned her face away from Himes' hand and asked him to remove his hand from her face.

29. Himes responded, "I can put my hand anywhere I want to."

30. Himes then said, "You people make me sick. Y'all think y'all can do whatever you want. If Marvin and I had not been at work, you people would have done whatever you wanted."

31. As Plaintiff and her team members were all African American, Plaintiff asked Himes, "Who is you people?"

32. Himes did not respond.

33. Himes had used the term "you people" when speaking to another African American employee whom he later fired, Andrew Manuel.

34. Plaintiff tried to walk away from Himes, who pursued Plaintiff.

35. Plaintiff said that her shift would leave until the scheduled end of the shift at 5:15, and added, "You know what. God is an awesome God."

36. Himes responded, "Your God is a liar. Look at you. Just look at you."

37. Stunned, Plaintiff said, "Huh?"

38. Himes again said, "Your God is a liar," and walked out.

39. After the incident, Plaintiff was extremely upset.

40. After Oscar Andrews, an African American supervisor, heard about what happened, he instructed Plaintiff to call Human Resources to report the incident.

41. Plaintiff did so that day, and left a voicemail for John Edenfield (Caucasian).

42. Plaintiff informed Edenfield of the racial and religious harassment Himes had subjected her to.

43. When Plaintiff reported to work on June 24, 2013, Edenfield called her into the office and told her he had reviewed the videotape, and that he was going to investigate.

44. Edenfield did not give Plaintiff an opportunity to recount what happened.

45. As Plaintiff was getting up to leave Edenfield's office, Edenfield said that he saw Plaintiff on tape for about three hours doing nothing.

46. Plaintiff informed Edenfield that her shift had met her numbers and there was no work to do.

47. Edenfield then asked Plaintiff why she had stayed on the clock, and Plaintiff responded that Himes would not let her shift go home.

48. Edenfield then said, "You started cleaning up at 4:37 and finished at 5," and asked why the shift did not clock out until 5:15.

49. Edenfield then accused Plaintiff of "stealing time" and informed Plaintiff that she was being suspended.

50. Plaintiff asked Edenfield if he was going to punish her for reporting Himes.

51. Edenfield responded that "everything was under investigation," and that Plaintiff should call him the next day at 10 a.m.

52. Plaintiff did so, at which point Edenfield instructed Plaintiff that the investigation was still going on, and that Plaintiff should call him again at 5 p.m.

53. Plaintiff did so, and left a voicemail.

54. Edenfield called Plaintiff back about ten minutes later and told Plaintiff the investigation was still going on, and that Plaintiff should call the next day.

55. Plaintiff called again the following day, at which Point Edenfield instructed her the issue had been "sent to corporate."

56. On June 28, 2013, Edenfield called Plaintiff and asked her to come to the plant.

57. Plaintiff met with Edenfield and Judi Herrera from Human Resources that afternoon.

58. At that time, Edenfield informed Plaintiff that corporate had determined she should be terminated.

59. Plaintiff asked why Herrera was present, and why she had not been present at the meeting on Monday, as Herrera was supposed to be a go-between for management and employees.

60. Plaintiff asked if Himes had been dismissed.

61. Edenfield replied that that was not Plaintiff's business.

62. Himes was not dismissed and is still working for Defendant.

63. Plaintiff was not given a reason for termination.

64. Himes had previously expressed hostility toward African American Christians, and made negative remarks about religion before, once criticizing an African

American church near where he lives (International Worship Center in Tallassee, Alabama) for having a pastor that is "hooping and hollering from 9 to 5."

65. Cynthia Lewis and Marcus Forston witnessed Himes harassing Plaintiff on June 23, 2013. Liteaba Seymore and Denise Tate also may have information pertinent to Plaintiff's situation.

66. After the incident, Lewis told Plaintiff, "Tom was all up in your face."

67. Plaintiff was replaced by an employee in her 20s.

68. In the EEOC investigation, Defendant informed the EEOC that Plaintiff was terminated for job abandonment and "falsifying the time clock by staying on the clock while not working."

69. Plaintiff reported to Edenfield prior to her termination that she had been required to stay at work, though there was no work for her to perform.

70. Defendant now contends that the reason for her termination was staying on the clock, as she had been instructed to do.

71. Plaintiff engaged in activity protected under the FLSA by recording hours she was required to work, and by reporting to Edenfield that she had been required to stay on the clock though she had no work to do.

72. Defendant retaliated against Plaintiff by suspending and then offering as its reason for termination Plaintiff's accurate recording of the hours she had worked.

## IV. FIRST THROUGH THIRD CAUSES OF ACTION
## DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND RETALIATION ON THE BASIS OF RACE—TITLE VII/42 U.S.C. §1981

73. As detailed in paragraphs 8 through 34 and 40 through 72, Plaintiff was terminated on the basis of race, subjected to a hostile work environment on the basis of race, and subjected to a retaliatory suspension and termination for reporting the racially hostile behavior of Tom Himes to Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b. That Plaintiff recover back pay, be reinstated or receive front pay, and recover compensatory and punitive damages;

c. That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d. Plaintiff further prays for such additional relief as the interests of justice may require.

## V. FOURTH THROUGH SIXTH CAUSES OF ACTION
## DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND RETALIATION ON THE BASIS OF RELIGION—TITLE VII

74. As detailed in paragraphs 35 through 72, Plaintiff was terminated on the basis of religion, subjected to a hostile work environment on the basis of religion, and

subjected to a retaliatory suspension and termination for reporting the religiously hostile behavior of Tom Himes to Defendant.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b. That Plaintiff recover back pay, be reinstated or receive front pay, and recover compensatory and punitive damages;

c. That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d. Plaintiff further prays for such additional relief as the interests of justice may require.

## VI. SEVENTH CAUSE OF ACTION
### AGE DISCRIMINATION–ADEA/ALABAMA AGE DISCRIMINATION IN EMPLOYMENT ACT

75. As detailed in paragraphs 67 through 72, Plaintiff was subjected to discrimination by Defendant because of her age. Plaintiff was replaced by a significantly younger employee. Defendant's reasons for terminating Plaintiff were pretext to discrimination.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a.  That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b.  That Plaintiff recover back pay, be reinstated or receive front pay, and recover liquidated damages;

c.  That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d.  Plaintiff further prays for such additional relief as the interests of justice may require.

## VII. EIGHTH CAUSE OF ACTION
### RETALIATION/DISCRIMINATION IN VIOLATION OF FLSA

76. As detailed in paragraphs 68 through 72, Plaintiff engaged in protected activity by recording hours she was required to work, and by complaining to Edenfield that she was being suspended in retaliation for recording hours she was required to work. Defendant terminated Plaintiff in retaliation for recording hours she worked and because Plaintiff complained to Edenfield that she was being suspended for working and clocking hours she was required to work.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a.  That the Court declare the rights and duties of the parties consistent with the

relief sought by Plaintiffs;

b. That Plaintiff recover back pay, be reinstated or receive front pay, and recover compensatory, liquidated, and punitive damages;

c. That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d. Plaintiff further prays for such additional relief as the interests of justice may require.

Plaintiff demands a trial by jury of all triable issues.

Respectfully Submitted,

Russell P. Parker
ASB-7571-S74P
2170 Highland Avenue South, Suite 111
Birmingham, AL 35205
T (205) 222-2524
F (205) 332-1988
RussParkerLaw@gmail.com

**Defendant's Address**
**Halla Visteon Climate Control Alabama Corp.**
**c/o CT Corporation System**
**2 North Jackson Street Suite 605**
**Montgomery, AL 36104**